IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIBERIU S. KISS,                                        Case No. 3:22-cv-00281-SB

               Plaintiff,                            **OPINION AND ORDER**

      v.

BEST BUY STORES; and JOHN DOE,

               Defendants.

---

**BECKERMAN, U.S. Magistrate Judge.**

      Plaintiff Tiberiu S. Kiss ("Kiss") filed this action against Best Buy Stores, L.P. ("Best Buy") and Best Buy employee John Doe ("Doe") (together, "Defendants"), alleging constitutional and state law claims arising from Defendants' enforcement of the State of Oregon's COVID-19 mask mandate.

      Now before the Court is Defendants' motion to dismiss Kiss's first amended complaint ("FAC") under FED. R. CIV. P. 12(b)(6) and for attorney's fees under 42 U.S.C. § 1988(b) and 42 U.S.C. § 12205. (Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 10.) The Court has jurisdiction over this matter under 28 U.S.C §§ 1331 and 1367, and all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. For the reasons discussed

PAGE 1 – OPINION AND ORDER

below, the Court grants Defendants' motion to dismiss and denies Defendants' motion for attorney's fees.

## BACKGROUND[1]

On November 13, 2021, Kiss entered a Best Buy store located in Beaverton, Oregon. (FAC ¶ 8.) The store had posted signs stating that everyone who enters must wear a face covering. (*Id.* ¶ 7.) The store's mask requirement was in place to comply with Oregon's indoor mask mandate, implemented in response to the COVID-19 pandemic.[2] (*Id.* ¶¶ 36-38, 40.) Immediately upon entry to the store, store employees confronted Kiss—who was not wearing a mask—and informed Kiss that to shop inside the store, he must wear a face covering. (*Id.* ¶ 8.) Kiss informed the employees that a medical condition prevented him from wearing a face mask. (*Id.* ¶ 9.) Kiss was referring to his deviated septum. (*Id.* ¶ 15.)

Kiss attempted to enter the store but Doe, the store's assistant manager, "walked in front of [Kiss] and bumped him to block his way from shopping." (*Id.* ¶ 10.) Doe went to call the police, instructed other store employees to watch Kiss, and told store cashiers not to allow Kiss to purchase anything. (*Id.* ¶ 12.) Doe repeatedly told Kiss that he must leave the store because

---

[1] Kiss pleads these facts in his first amended complaint and the Court assumes they are true for the purpose of deciding this motion. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (noting that when reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party").

[2] At the time, OR. ADMIN. R. 33-019-1025(5) provided that "[i]ndividuals, regardless of vaccination status, are required to wear a mask, face covering or face shield . . . when in an indoor space." The rule also provided that "[a] person responsible for an indoor space must: (a) [e]nsure that employees, contractors, and volunteers comply with this rule within the indoor space[;] (b) [m]ake reasonable efforts to ensure customers, guests, visitors and other individuals comply with this rule within the indoor space[; and] (c) [p]ost signs at every entrance to the indoor space that masks, face coverings or face shields are required as described in this rule." OR. ADMIN. R. 33-019-1025(7).

Kiss was not wearing a face covering. (*Id*. ¶ 13.) Kiss again explained he could not wear a mask "due to his medical condition" and explained that "Best Buy could not discriminate against him because of his disability." (*Id*. ¶ 14.) Kiss alleges that Best Buy "treated [him] like a criminal." (*Id*. ¶ 16.)

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Kiss alleges that Defendants violated (1) his constitutional rights under the Fourteenth Amendment; (2) the Emergency Use Authorization Act; (3) the Americans with Disabilities Act ("ADA"); and (4) the state equivalent, OR. REV. STAT. § 659A.142(4). (FAC ¶¶ 49-80.) Kiss also alleges state law assault and battery claims against Doe. (FAC ¶¶ 81-86.) Kiss seeks damages, an injunction preventing Defendants from enforcing any future mask mandate, and attorney's fees.

## I.    FOURTEENTH AMENDMENT CLAIM

Kiss brings his Fourteenth Amendment claim under 42 U.S.C. § 1983 and alleges that Defendants violated his constitutional right to due process by illegally coercing him to wear an "experimental medical device" (i.e., a face covering) to shop at Best Buy during the COVID-19 pandemic. (FAC ¶¶ 49-56.) Defendants move to dismiss Kiss's Fourteenth Amendment claim for

several reasons, including that Defendants are not state actors and Kiss does not allege a violation of a fundamental right. (Defs.' Mot. at 4-16.) Accepting Kiss's factual allegations as true and drawing all reasonable inferences in his favor, the Court concludes that Kiss has failed to state a Fourteenth Amendment claim.

### A.    State Action

Kiss alleges that upon entry to Best Buy, he was "informed that, per the Governor's mandate, [Kiss] had to wear a mask to shop at Best Buy." (FAC ¶ 8.) Kiss alleges that "Oregon instituted the [mask mandate] and then made Best Buy its enforcer of the rule in Best Buy Stores." (*Id*. ¶ 39.) Kiss claims that "Best Buy do[es] not pressure customers to wear face masks in states that do not have a mask mandate" and "the sole reason that . . . Best Buy pressured [Kiss] to wear a facemask [was] because of" Oregon's mask mandate, and therefore "Best Buy's violation of [Kiss's] rights [was] a result of government policy" and "fairly attributable to the government." (*Id*. ¶ 41.) Kiss also claims that because Defendants "pressured[,]" "harass[ed,]" "threatened[,]" and "attempt[ed] to get [Kiss] arrested and/or charged with trespassing for not putting on a face mask," they are necessarily "state actors acting under color of state law." (*Id*. ¶¶ 47-48.)

### 1.    Applicable Law

The Due Process Clause of the Fourteenth Amendment provides that no "State [may] deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "[T]he Fourteenth Amendment . . . applies to acts of the states, not to acts of private persons or entities." *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982).

"[Section] 1983, which was enacted pursuant to the authority of Congress to enforce the Fourteenth Amendment, prohibits interference with federal rights under color of state law." *Id*. "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same

question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of

federal rights 'fairly attributable to the State?'" *Id.* (citing *Lugar v. Edmondson Oil Co.*, 457 U.S.

922, 937 (1982)). "If the action of the [defendant] is not state action, our inquiry ends." *Id.*

"When addressing whether a private party acted under color of law, [courts] start with the

presumption that private conduct does not constitute governmental action." *Sutton v. Providence*

*St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (citations omitted). "In order for private

conduct to constitute governmental action, 'something more' must be present." *Id.* (quoting

*Lugar*, 457 U.S. at 939); *see also Lugar*, 457 U.S. at 939 ("Action by a private party pursuant to

this statute, without something more, was not sufficient to justify a characterization of that party

as a 'state actor.'").

The Ninth Circuit has "recognized at least four different general tests that may aid [the

Court] in identifying state action: '(1) public function; (2) joint action; (3) governmental

compulsion or coercion; and (4) governmental nexus.'" *Rawson v. Recovery Innovations, Inc.*,

975 F.3d 742, 747 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021) (quoting *Kirtley v. Rainey*,

326 F.3d 1088, 1092 (9th Cir. 2003)). "Faithful application of the state-action requirement . . .

ensures that the prerogative of regulating private business remains with the States and the

representative branches, not the courts." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52

(1999); *see also Sutton*, 192 F.3d at 838-39 ("To accept Plaintiff's argument [that a private

business qualifies as a state actor] would be to convert every [business] . . . into a governmental

actor every time it complies with a presumptively valid, generally applicable law, such as an

environmental standard or a tax-withholding scheme. Private employers would then be forced to

defend those laws and pay any consequent damages, even though they bear no real responsibility

for the violation of rights arising from the enactment of the laws."). The Court addresses each test in turn.

### 2.    Analysis

#### a.    The Public Function Test

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Kirtley*, 326 F.3d at 1093 (citation omitted). "The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental." *Id.* (simplified).

Kiss alleges that "[f]ace masks are purportedly intended to help control the spread of COVID-19 [and the p]rotection of the public's health from infectious disease is a public function that is exclusively and traditionally governmental." (FAC ¶ 43.) Kiss asserts that "Defendants were performing a traditionally and exclusively governmental function when they pressured [Kiss] to wear a face mask." (*Id.*)

Consistent with well-settled precedent, the Court rejects Kiss's assertion that Best Buy's compliance with a state health regulation converted Best Buy's action into that of the state for the purposes of the Fourteenth Amendment. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for the purposes of the Fourteenth Amendment."); *see also Adams v. S. Cal. First Nat'l Bank*, 492 F.2d 324, 330-31 (9th Cir. 1973) ("The test is not state involvement, but rather is significant state involvement [because s]tatutes and laws regulate many forms of purely private activity . . . and subjecting all behavior that conforms to state law to the Fourteenth Amendment would emasculate the state action concept."); *Hale v. Vanguard*, No. 3:21-cv-01236-YY, 2021 WL 4999020, at *2 (D. Or. Oct. 4, 2021) ("[S]imply because a

PAGE 6 – OPINION AND ORDER

private entity is subject to federal law does not make it a 'state actor' or establish it was engaged in conduct under the color of state law."), *report and recommendation adopted*, 2021 WL 4993477 (Oct. 27, 2021).

The Court finds that Kiss has not plausibly alleged that Best Buy is a state actor under the public function test.

### b.    The Joint Action Test

"The joint action test asks 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1129, 1140 (9th Cir. 2012) (quoting *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002)). The test "can be satisfied either 'by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents.'" *Id.* (citation omitted). The joint action test "requires that the private parties have participated in the 'activity which deprive[d] [the plaintiffs] of constitutional rights.'" *Smith v. N. Star Charter Sch., Inc.*, 593 F. App'x 743, 744 (9th Cir. 2015) (quoting *Brunette v. Humane Soc'y of Venture Cnty.*, 294 F.3d 1205, 1211 (9th Cir. 2002)); *see also Tsao*, 698 F.3d at 1140 ("Ultimately, joint action exists when the state has 'so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity.'") (citation omitted).

Kiss alleges that Defendants "were willfully participating in a joint activity with the State of Oregon when [Doe] insisted that [Kiss] wear a mask or leave the premises" and that Defendants' "attempt[] to get [Kiss] arrested and/or charged with trespassing for not putting on a mask" "was sufficient joint action with the State to make Defendants state actors." (FAC ¶¶ 44, 46-47.)

///

With respect to Kiss's first argument, the Ninth Circuit has established that joint action "require[s] a substantial degree of cooperation." *Franklin*, 312 F.3d at 445. Here, Kiss's assertion that Defendants requested he wear a mask to comply with state law falls short of the "substantial degree of cooperation" required for the Court to find state action under the joint action test.[3] *See id.*; *see also O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1184 (N.D. Cal. 2022) (finding that "generalized statements about [a private entity and the government] working together" "do not support an inference of an illegal conspiracy"); *cf. Tsao*, 698 F.3d at 1140 (finding joint action where a private business had a "system of cooperation and interdependence with the [police department]" including that, *inter alia*, the business's "security personnel ha[d] the authority, normally reserved to the state, to issue a citation to appear in court for the crime of misdemeanor trespassing").

Kiss's second argument that "the summoning of the police by a private party to arrest a customer [is] sufficient joint action to make the private party a state actor" also fails. (Pl.'s Resp. at 15) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Kiss's reliance on *Adickes* to support his claim is misplaced. *Adickes* involved a plaintiff who was arrested as the result of an alleged conspiracy between a local business and the police to enforce unconstitutional segregation in the town. *Id.* The Supreme Court held that the plaintiff could establish an equal protection claim against the business "if she can prove that a [store] employee, in the course of employment, and a [] policeman somehow reached an understanding to deny [the plaintiff]

---

[3] Indeed, Kiss acknowledges that Best Buy did not require face coverings in stores outside of Oregon, "casting doubt on the proposition that Best Buy was a willing participant in Oregon's indoor face covering requirement." *Edtl v. Best Buy Stores, L.P.*, No. 3:22-cv-00003-AR, 2022 WL 11436434, at *6 (D. Or. Oct. 13, 2022).

service in [the store], or to cause her subsequent arrest because she was a white person in the company of [Black persons]." *Id.*

The Court finds no plausibly analogous situation here, because even viewed in the light most favorable to Kiss, Kiss has not alleged any agreement between Best Buy and the police, nor sufficient allegations to infer that Defendants conspired with the police to violate Kiss's constitutional rights. *See Edtl*, 2022 WL 11436434, at *6 ("The court disagrees with [the plaintiff's] assertion that calling the police when a customer becomes recalcitrant and refuses to leave a store when asked to do so is the 'something more' that the Ninth Circuit requires of private conduct."); *see also Levi v. Safeway*, No. C-94-0946 MHP, 1994 WL 706341, at *3 (N.D. Cal. Dec. 12, 1994) ("Although [the plaintiff] generally alleges multiple conspiracies to violate his rights, he has not stated any facts to support his conclusory allegations that these conspiracies existed [and the plaintiff] confirmed [at a hearing] that the only facts supporting his conspiracy allegations were that [the store] called the police and 'relied on state resources[,' but u]nder [the p]laintiff's logic, any person who calls the police to halt a burglary in progress automatically becomes a state actor subject to suit under [S]ection 1983" and concluding that a store's "complaint to police coupled with a request for assistance cannot expose [the store] to [S]ection 1983 liability").

The Court finds that Kiss has not plausibly alleged that Best Buy is a state actor under the joint action test.

### c.    The State Compulsion Test

"The compulsion test considers whether the coercive influence or significant encouragement of the state effectively converts a private action into a government action." *Kirtley*, 326 F.3d at 1094 (simplified). "The state compulsion test requires more than the taking of action against a backdrop of applicable state regulations." *Santiago v. Puerto Rico*, 655 F.3d

61, 71 (1st Cir. 2011); *see also Lugar*, 457 U.S. at 935 ("If action under color of state law means nothing more than that the individual act 'with the knowledge of and pursuant to [a] statute,' then clearly . . . that would not, in itself, satisfy the state-action requirement of the Fourteenth Amendment.") (citation omitted).

Kiss argues that by implementing a $500 fine for businesses that do not enforce the mask mandate, "Oregon has coerced, or significantly encouraged, Defendants to require Best Buy customers to wear face masks."[4] (FAC ¶ 45.) But imposing a consequence for failing to comply with state law cannot convert a private company's compliance with state law into state action, or nearly every private entity complying with state law would be deemed a state actor.[5] *See Santiago*, 655 F.3d at 71 ("The state compulsion test requires more than the taking of action against a backdrop of applicable state regulations."); *Gutierrez v. Dep't of Child. & Family Servs.*, No. CV 21-8238-JLS(E), 2022 WL 3574691, at *5 (C.D. Cal. Feb. 3, 2022) ("[A]lthough [the private party defendants] may be subject to state regulation, such regulation does not render [the d]efendants state actors for purposes of section 1983.").

///

---

[4] *See* OR. ADMIN. R. 33-019-1025(9) ("Any person or person responsible for an indoor space who violates any provision of this rule is subject to civil penalties of up to $500 per day per violation.").

[5] Kiss relies on *Mathis v. Pacific Gas & Electric Co.*, 891 F.2d 1429, 1434 (9th Cir. 1989), in which the Ninth Circuit held that an employee's allegation that a federal agency's ability to suspend a utility's license may be sufficiently coercive to convert the utility's compliance with a federal policy to state action was not "frivolous." The government's ability to suspend the license of a utility is a far cry from a $500 fine. In any event, the Ninth Circuit's more relevant holding in *Mathis* was that the plaintiff did not otherwise adequately plead state action, where the employees' "claim of state action is essentially confined to allegations that [PG&E] is a public utility subject to extensive state regulation [and t]hat fact, without more, is insufficient to infuse its conduct with state action" and "the complaint therefore raised no colorable claim under 42 U.S.C. § 1983." *Id.* (citing *Jackson*, 419 U.S. 345).

The Court finds that Kiss has not plausibly alleged that Best Buy is a state actor under the state compulsion test. *See Edtl*, 2022 WL 11436434, at *6 n.6 ("The court also rejects [the plaintiff's] argument that *Sutton* is distinguishable because [OR. ADMIN. R.] 333-019-1025(9) imposes a $500 fine for failing to enforce the mask requirement.").

### d.    The Governmental Nexus Test

"Arguably the most vague of the four approaches, the nexus test asks whether 'there is a such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself.'" *Kirtley*, 326 F.3d at 1094-95 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). "Generally, the governmental nexus test requires evidence that the private actor is entwined with governmental policies, or the government is entwined in the private actor's management or control." *Gillis v. Chapman*, No. 6:17-cv-00705-AA, 2022 WL 991669, at *11 (D. Or. Mar. 31, 2022) (quoting *Webber v. First Student, Inc.*, 928 F. Supp. 2d 1244, 1260 (2013)). "A showing of mere 'significant links' is insufficient to demonstrate a governmental nexus between the state and a private entity without further evidence of 'substantial interconnection.'" *Id.* (quoting *Webber*, 928 F. Supp. 2d at 1260).

"The Ninth Circuit has articulated four factors to consider when determining whether entwinement exists: (1) whether the private entity is primarily made up of state institutions; (2) whether state officials dominate decision making of the private entity; (3) the private entities['] funds are largely generated by the state institutions; and (4) whether the private entity is acting in lieu of a traditional state actor." *Id.* (citing *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008)).

///

///

Kiss does not allege the necessary entwinement to satisfy the governmental nexus test—i.e., he does not allege that Best Buy is part of a state institution, that state officers dominate Best Buy's decision-making process, that the State funds Best Buy, nor that Best Buy is acting in lieu of a traditional state actor. *Cf. Brentwood Acad.*, 531 U.S. at 298 (holding that entwinement supported the conclusion that an athletic association was a state actor for the purposes of the Fourteenth Amendment because, *inter alia*, the association was comprised of 84% public schools and public schools largely provided for the association's support); *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397-98 (1995) (holding that regardless of its congressional designation as a private entity, Amtrak was "an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the Government by the Constitution" because, *inter alia*, "six of [Amtrak's] eight externally named directors . . . are appointed directly by the President of the United States" and Amtrak was "established and organized under federal law for the very purpose of pursuing federal governmental objectives, under the direction and control of federal government appointees").

Accordingly, the Court finds that Kiss has not plausibly alleged that Best Buy is a state actor under the governmental nexus test.

### 3.    Conclusion

The Court finds that Kiss has failed plausibly to allege that Best Buy and its assistant store manager are state actors, and therefore Kiss cannot state a Section 1983 claim against Defendants. *See Lugar*, 457 U.S. at 939 ("Action by a private party pursuant to this statute, without something more, was not sufficient to justify a characterization of that party as a 'state actor.'"); *Edtl*, 2022 WL 11436434, at *6 ("Likewise, with the generally applicable law challenged here, [the plaintiff] has not alleged the kind of willful cooperation with the State of Oregon and its mask requirement that would constitute the 'something more' required to find

that defendants were state actors."); *Al Dey v. Eye Express Optical*, No. 22-cv-3861 (LTS), 2022 WL 2342625, at \*2 (S.D.N.Y. June 28, 2022) (dismissing Section 1983 claim based on the defendant's enforcement of a COVID-19 mask mandate because "[d]efendant Eye Express Optical is a private party and does not appear to work for any state or other government body"); *see also Belcher v. Wal-Mart Stores, Inc.*, No. 3:20-cv-00194-SLG, 2020 WL 5606894, at \*2 (D. Alaska Sept. 18, 2020) (dismissing Section 1983 claims alleging constitutional violations related to shoplifting and allegations by Wal-Mart security and finding "Walmart is a private party; it does not act with the virtue or authority of state law, and therefore, it is not a state actor"); *Alexander v. Target Inc.*, No. 19-cv-07492-PJH, 2019 WL 6525651, at \*2 (N.D. Cal. Dec. 4, 2019) (dismissing Section 1983 claim against a Target store based on allegations that "loss prevention staff at [the store] tackled [the plaintiff] and then detained him without reading him his *Miranda* rights [and] denied him an attorney" because "[t]he [d]efendants were not state actors, rather they were employees at a retail store and plaintiff has not shown they were acting under color of state law"); *Gibson v. Family Dollar*, No. 119CV00214DADSKO, 2019 WL 1517664, at \*4 (E.D. Cal. Apr. 8, 2019) (dismissing Fourth Amendment claim against a retail store based on an employee's actions that resulted in the plaintiff's arrest for robbery, and finding that the "amended complaint fail[ed] plausibly to allege that [the d]efendants acted under color of state law—an essential element to the maintenance of a Section 1983 claim"); *Wilkes v. Walgreen's Store*, No. C 07-2010MJJPR, 2007 WL 2222212, at \*1 (N.D. Cal. July 30, 2007) (dismissing Section 1983 claim alleging "a security guard and store manager at a Walgreen's store . . . assaulted him[,]" and noting that "[p]rivate citizens, such as employees of a private company such as Walgreen's, as well as Walgreen's itself, are not 'state actors' under § 1983") (citation omitted).

### B.    Fundamental Right

Even if Kiss could adequately plead that Defendants are state actors, "the ultimate inquiry in a Fourteenth Amendment case is, of course, whether th[e alleged] action constitutes a denial or deprivation by the State of rights that the Amendment protects." *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 n.4 (1978). Kiss argues that Oregon's face covering requirement violated his constitutionally protected liberty interest to refuse medical treatment and a "right to free[ly] exercise his power of choice for wearing an experimental medical device[.]" (FAC ¶¶ 51-52.) Courts across the country have rejected Kiss's arguments.

"The due process clause of the Fourteenth Amendment substantively protects a person's rights to be free from unjustified intrusions to the body, to refuse unwanted medical treatment and to receive sufficient information to exercise these rights intelligently." *Benson v. Terhune*, 304 F.3d 874, 884 (9th Cir. 2002) (citations omitted). However, as Kiss's counsel acknowledged at oral argument, courts have already recognized that "the wearing of a cloth (or even medical grade) face covering is not medical treatment [and] is not an intrusion on the body." *Health Freedom Def. Fund, Inc. v. City of Hailey*, No. 1:21-cv-00389-DCN, 2022 WL 716789, at *8 (D. Idaho Mar. 10, 2022); *see also Zinman v. Nova S.E.U., Inc.*, No. 21-CV-60723-RUIZ/ STRAUSS, 2021 WL 4025722, at *17 (S.D. Fla. Aug. 30, 2021) ("With respect to [the plaintiff's] bodily intrusion and medical treatment contentions, such characterizations are implausible . . . [w]earing a mask on the outer surface of one's face to cover one's nose and mouth does not 'intrude' within one's body . . . nor can one plausibly allege that the government is requiring medical treatment by requiring individuals to wear a face mask."); *cf. Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1155 (D. Or. 2021) (rejecting the plaintiffs' assertion that a "mask mandate impair[ed] their ability to make medical and other

health care decisions on behalf of their children . . . because the mask mandate 'no more requires a medical treatment than laws requiring shoes in public places'") (simplified).

Another judge in this district recently dismissed an identical Fourteenth Amendment claim against Best Buy, stating that the court was "unpersuaded that refusal of the requirement of wearing a face covering while shopping indoors—a public health requirement meant to prevent the spread of COVID-19—amounts to a fundamental right under the Due Process Clause." *Edtl*, 2022 WL 11436434, at *4. "The refusal of medical treatments implicated in the cases on which [the plaintiff] relies concern profound medical decisions" and "[w]earing a face covering indoors while shopping does not match the gravity of self-determining decisions about life and death, or medication that significantly changes a person's mental processes." *Id.* Thus, "[t]he court does not construe the fundamental right to refuse medical treatment so broadly as to include wearing a face covering." *Id.* (citations omitted). So too here.

Courts across in the country are in accord that there is no constitutional right not to wear a face covering during a global pandemic. *See, e.g.*, *Health Freedom Def. Fund, Inc.*, 2022 WL 716789, at *8 (holding that the challenged mask mandate did not "trigger[] a fundamental liberty interest"); *Miranda on behalf of M.M. v. Alexander*, No. CV 21-535-JWD-EWD, 2021 WL 4352328, at *4 (M.D. La. Sept. 24, 2021) ("[T]here is no fundamental constitutional right to not wear a mask."); *Whitfield v. Cuyahoga Cnty. Pub. Library Found.*, No. 1:21 CV 0031, 2021 WL 1964360, at *2 (N.D. Ohio May 17, 2021) ("[T]here is no general constitutional right to wear, or to refuse to wear a face mask in public places."); *Forbes v. Cnty. of San Diego*, No. 20-cv-00998-BAS-JLB, 2021 WL 843175, at *5 (S.D. Cal. Mar. 4, 2021) (dismissing the plaintiff's challenge to a state mask mandate because the "[p]laintiff's[] claim does not identify a fundamental liberty interest protected by the substantive component of the Due Process Clause");

*Stewart v. Justice*, 518 F. Supp. 3d 911, 918 (S.D.W.Va. 2021) (dismissing the plaintiff's challenge to a mask mandate because the court "simply f[ound] no invasion of fundamental constitutional rights here").

Consistent with these well-reasoned authorities, Kiss has not plausibly alleged that Defendants violated a constitutionally protected fundamental right by requiring him to wear a face covering while shopping indoors at a retail store during a global pandemic.[6] In light of Kiss's failure plausibly to plead state action or that Defendants violated a fundamental right, the Court dismisses Kiss's Fourteenth Amendment claim.[7]

## II.    THE EMERGENCY USE AUTHORIZATION ACT

Kiss also brings a claim under a provision of the Federal Food, Drug, and Cosmetic Act ("FDCA") commonly known as the Emergency Use Authorization Act. *See* 21 U.S.C. § 360bbb-3. Kiss alleges that under the Emergency Use Authorization Act, "individuals have the option to accept or refuse use of a face mask." (FAC ¶ 58.) Kiss also alleges that his "right to informed consent under [the Emergency Use Authorization Act] supersedes Oregon's [mask mandate.]" (*Id.* ¶ 59.) Kiss alleges he therefore "had the absolute right to refuse to wear a face mask[,]" "Defendants failed to acknowledge" that right, and that while acting under color of state law,

---

[6] Kiss invokes the Nuremberg Code to support his claim, likening Oregon's mask mandate to the Nazis' forced medical experimentation. (*See* Pl.'s Resp. at 28.) The Court joins other courts that have found the comparison offensive. *See, e.g.*, *Health Freedom Defense Fund, Inc.*, 2022 WL 716789, at *9 (finding that "the suggestion that being asked to simply wear a mask to protect the health of individuals and communities is even in the same realm as torture or human experimentation strains reason and is offensive"); *see also Denis v. Ige*, No. CV 21-00011 SOM-RT, 2021 WL 5312294, at *4 (D. Haw. Nov. 15, 2021) (characterizing the invocation of the Nuremberg Code in the plaintiff's opposition to the defendant's motion to dismiss claims related to a mask mandate to be "patently frivolous").

[7] The Court acknowledges Defendants' additional argument that they could not have coerced Kiss to wear a face covering because he never, in fact, wore a face covering during the alleged incident, but the Court need not reach that issue.

"Best Buy is not permitted to assert the condition that [Kiss] give up his right not to wear a face mask in order to enter Best Buy's store." (*Id*. ¶¶ 60-63.) Kiss again "asserts his rights under federal law against Defendants pursuant to 42 U.S.C. § 1983 [because e]ach of the Defendants, acting under the color of law, have violated [Kiss's] rights to refuse to wear an experimental medical device." (*Id*. ¶ 63.)

Having already determined that Kiss fails adequately to allege that Defendants are state actors, the Court dismisses Kiss's Emergency Use Authorization Act claim.

Even if Kiss could adequately plead state action, courts have consistently held that the Emergency Use Authorization Act provides no private right of action. *See, e.g.*, *Roush on behalf of E.R. v. Alexander*, No. CV 21-528-JWD-RLB, 2022 WL 846807, at *12 (M.D. La. Feb. 24, 2022)* (dismissing claim that a mask mandate violated the Emergency Use Authorization Act because "[t]here exists 'no private right of action for a claim under Title 21'" (citing 21 U.S.C. § 337(a)), *report and recommendation adopted*, 2022 WL 842852 (Mar. 21, 2022); *Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F. Supp. 3d 1165, 1175 (S.D. Fla. 2021) (dismissing Section 1983 claim challenging mask mandate under the Emergency Use Authorization Act because "the FDCA clearly states that its requirements may only be enforced by the United States government[,]" "the availability of private relief under the FDCA is foreclosed by express provision of the statute itself[,]" and "the § 1983 remedy is unavailable to [the p]laintiffs insofar as they seek to assert a claim that the FDCA preempts the [m]ask [m]andate under the Supremacy Clause") (simplified); *see also* 21 U.S.C. § 337(a) (with certain exceptions applicable to the states, "all . . . proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States"); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather

than private litigants who are authorized to file suit for noncompliance with the medical device provisions"); *cf. Navy Seal 1 v. Biden*, 574 F. Supp. 3d 1124, 1130 (M.D. Fla. 2021) (in the context of challenging a COVID-19 vaccine mandate, holding that the statutory "option to accept or refuse" under the "informed consent" provisions of the Emergency Use Authorization Act "confers no private right of action, creates no opportunity to sue the government, and permits enforcement by the United States and by the states in specific circumstances only") (simplified).

For these reasons, the Court dismisses Kiss's Emergency Use Authorization Act claim. *See Edtl*, 2022 WL 11436434, at *7 (dismissing the plaintiff's identical Emergency Use Authorization Act claim against Best Buy in light of "three critical defects[,]" including that "defendants are not state actors[,]" the plaintiff's "own allegations show that he had the choice of leaving the Best Buy store so that he would not have to wear a mask[,]" and the plaintiff "has not provided the court with a single case or a developed argument that ties a violation of the Supremacy Clause to a cause of action under § 1983") (citations omitted).

## III.    ADA CLAIM

Kiss claims that Best Buy denied Kiss entry to its store "because of his disability" and "failed to offer or make any reasonable accommodation for [Kiss's] disability." (FAC ¶¶ 67-68.) Kiss seeks an injunction prohibiting Best Buy "from abiding by any future activation of an indoor mask mandate[.]"[8] (*Id*. ¶ 72.) Defendants argue that the Court should dismiss Kiss's ADA claim because, among other reasons, "Oregon no longer has a face-covering requirement" and Kiss's claim is therefore moot. (*Id*. at 19.) The Court agrees.

///

---

[8] "Damages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1)).

Kiss filed this case in early 2022, based on a November 2021 event when Oregon's mask mandate was still in effect. The parties do not dispute that the mask mandate ended in March 2022. As a result, there is no longer a statewide mask mandate for the Court to enjoin. *Cf. Brach v. Newsom*, 38 F.4th 6, 11 (9th Cir. 2022) (finding moot the plaintiff's request for an injunction and declaratory judgment on California's school reopening plan related to the COVID-19 pandemic because the state had rescinded the challenged executive orders). Kiss nevertheless requests that the Court enjoin "any future activation" of an indoor mask mandate. (FAC ¶ 72.) The Court declines to do so.

While it is possible that at some point in the future an executive order could issue reinstating the indoor mask mandate in Oregon, "the mere power to reenact a challenged policy is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists." *Brach*, 38 F.4th at 14 (simplified); *see also Horizon Christian Sch. v. Brown*, 854 F. App'x 807, 808-09 (9th Cir. 2021) (rejecting the plaintiff's argument that a claim was not moot because there remained a "constant threat" that a COVID-19 restriction could be reinstated because, *inter alia*, the underlying restriction was no longer in effect and there was no evidence that the governor would take action without notice); *Resurrection Sch. v. Hertel*, 35 F.4th 524, 527 (6th Cir. 2022) (en banc) (finding that challenge to Michigan's statewide mask mandate was moot because the state had repealed the mandate); *cf. Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68-69 (2020) (holding that New York's "severe restrictions on the applicants' religious services must be enjoined" and finding that requested injunctive relief was not moot in November 2020 because "the applicants remain under a constant threat" that the state would reimpose restrictions on religious services based on constantly changing risk classifications).

No such "reasonable expectation" of recurrence exists here, especially because "[t]he trajectory of the pandemic has been altered by the introduction of vaccines, including for children, medical evidence of the effect of vaccines, and expanded treatment options." *Brach*, 38 F.4th at 15 (finding no "reasonable expectation" that California would once again close schools in response to the pandemic); *see also Eden, LLC v. Justice*, 36 F.4th 166, 172 (4th Cir. 2022) (finding as moot a challenge to an early pandemic restriction in light of changed circumstances). Kiss's anticipation of a possible future recurrence is "too 'remote and speculative' to serve as a firm foundation for [the court's] jurisdiction." *Brach*, 38 F.4th at 14 (citing *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985)).

Kiss requests only injunctive relief that this Court cannot provide, and therefore the Court dismisses Kiss's ADA claim as moot.[9]

## IV. STATE CLAIMS

Kiss also alleges that Defendants violated OR. REV. STAT. § 659A.142(4) (Oregon's disability discrimination statute), and that Doe committed the torts of assault and battery when he "bump[ed]" Kiss while attempting to prevent him from entering the store without a face covering. (FAC ¶¶ 10, 81-86.) In light of Kiss's pleading of federal question jurisdiction, the Court's dismissal of Kiss's federal claims, and because this case has not moved past the pleading stage, the Court declines to exercise supplemental jurisdiction over Kiss's state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all the claims over which it has original jurisdiction"); *Meredith Lodging LLC v. Vacasa LLC,* No. 6:21-cv-326-MC, 2021 WL 5316986, at *6 (D. Or. Nov. 15, 2021) (dismissing federal claims and declining to exercise supplemental jurisdiction over the

---

[9] In light of the Court's dismissal, it does not reach Defendants' other arguments for dismissing Kiss's ADA claim.

plaintiff's related state law claims); *see also Tatoma, Inc. v. Newsom*, No. 3:21-cv-098-BEN-JLB, 2022 WL 686965, at \*6 (S.D. Cal. Mar. 8, 2022) (declining to exercise supplemental jurisdiction on the plaintiff's state law claims related to COVID-19 restrictions after dismissing federal claims); *Celauro v. Whole Foods Mkt.,* No. 21-CV-00310-KLM, 2021 WL 4844538, at \*6 (D. Colo. Oct. 18, 2021) (dismissing Section 1983 claims that the defendants' "attempt[] to compel [the p]laintiff to wear a mask while shopping" violated his constitutional "right to make his own medical/health decisions" and declining to exercise supplemental jurisdiction over related state law claims); *Oakes v. Collier Cnty.*, 515 F. Supp. 3d 1202, 1217 (M.D. Fla. Jan. 17, 2021) (declining to exercise supplemental jurisdiction over COVID-19 related state law claims upon dismissal of federal claims).

## V.    DISMISSAL WITH PREJUDICE

Kiss requests the opportunity to amend his first amended complaint if the Court finds "anything that is insufficiently pleaded." (Pl.'s Resp. at 39.) The Court declines Kiss's request because Kiss cannot cure the lack of state action nor the failure to plead a fundamental right with respect to his Fourteenth Amendment claim, cannot cure the lack of state action nor the absence of a private right of action for his Emergency Use Authorization Act claim, and cannot cure the mootness of his ADA claim. Any amendments would be futile, and therefore the Court dismisses Kiss's federal claims with prejudice. *See Edtl*, 2022 WL 11436434, at \*7 (dismissing identical constitutional claims "with prejudice as amendment would be futile" (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998))). The Court dismisses Kiss's state claims without prejudice, and he may file those claims in state court.[10]

---

[10] In light of the Court's dismissal of all claims in the first amended complaint, the Court does not address Defendants' motions to strike and for a more definite statement. (Defs.' Mot. at 21-23) (citing FED. R. CIV. P. 12 (e), (f)).

## VI.    FEE MOTION

Defendants move for an order requiring Kiss to pay their attorney's fees pursuant to 42 U.S.C. § 1988(b) and under the ADA, for "defending against these meritless claims and placing Defendants in the position of defending government action outside of their control." (Defs.' Mot. at 23-24) (citing *Sutton,* 192 F.3d at 839). Defendants argue that a private business defending against a Section 1983 claim is "rare" and because Kiss "has no basis" for his "meritless" claims, they "should not bear the burden of their attorneys' fees for defending" against Kiss's lawsuit. (*Id*. at 24.)

Under 42 U.S.C. § 1988(b), "[i]n any action or proceeding to enforce a provision of [Section 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee[.]" 42 U.S.C. § 1988(b). Courts are permitted to award attorney's fees "to prevailing *defendants* under 42 U.S.C. § 1988 . . . only in 'exceptional circumstances' . . . for claims that are 'frivolous, unreasonable, or groundless.'" *Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 971 (9th Cir. 2011) (quoting *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990) and *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). "The strict nature of the *Christiansburg* standard is premised on the need to avoid undercutting Congress' policy of promoting vigorous prosecution of civil rights violations under . . . [Section] 1983." *Miller v. Los Angeles Cnty. Bd. of Educ*., 827 F.2d 617, 619 (9th Cir. 1987).

Similarly, under 42 U.S.C. § 12205, "[i]n any action . . . commenced pursuant to [the ADA], the court [], in its discretion, may allow a prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs[.]" 42 U.S.C. § 12205. "Attorney's fees under § 12205 should be awarded to a prevailing defendant only if the plaintiff's action was frivolous, unreasonable, or without foundation." *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1190 (9th Cir. 2001) (simplified).

PAGE 22 – OPINION AND ORDER

Although the Court acknowledges that Defendants' fee request presents a close question,[11] in particular with respect to Kiss's constitutional claims, the Court "finds that this action is not an exceptional circumstance for which awarding attorney fees is appropriate." *Edtl, 2022 WL 11436434, at \*7.* As the court found in the companion case against Best Buy, "[i]n December 2021, more than a year and a half since the beginning of the COVID-19 pandemic, [the plaintiff] was far from alone in believing that the mask mandate was a significant infringement on personal freedoms." *Id.* "Although the court finds that there is considerable daylight between [the plaintiff's] belief that the mask mandate (and Best Buy's compliance with it) overreached and a cognizable legal claim, the court is reluctant to find that [the plaintiff] could not have reasonably believed that he had an adequate basis in law and fact to pursue the claims against defendants." *Id.* The Court agrees that "[t]o award attorney fees in this case would run contrary to 'the efforts of Congress to promote the vigorous enforcement of the civil rights laws.'" *Id.* (quoting *Harris,* 631 F.3d at 968, 971). Accordingly, the Court denies Defendants' fee motion.

///

---

[11] *See, e.g., Health Freedom Def. Fund, Inc. v. City of Hailey,* No. 1:21-cv-00389-DCN, 2022 WL 3597947, at \*3 (D. Idaho Aug. 23, 2022) (awarding fees to the defendants for defending against the plaintiff's Fourteenth Amendment claim related to a COVID-19 mask mandate because, *inter alia,* "numerous district courts around the country had already dismissed similar claims before [the p]laintiffs brought suit," and at the time of filing the plaintiffs "were aware—or should have been aware—of the long line of cases in which numerous courts had struck down" plaintiffs' "substantive Fourteenth Amendment argument that they have a fundamental liberty interest to medical autonomy—that is, to not wear a mask" and concluding that "[s]imply put, this is an 'exceptional case' where the [d]efendants are entitled to an award of attorney fees"); *Branch-Noto v. Sisolak,* No. 221CV01507JADDJA, 2022 WL 2955108, at \*1 (D. Nev. July 26, 2022) (awarding fees to defendants under 42 U.S.C. § 1988 following dismissal with prejudice of plaintiffs' "legally frivolous" claims seeking to enjoin indoor mask mandates related to the COVID-19 pandemic, and noting that "[a]t oral argument, plaintiffs' counsel conceded that most of the claims were unsupported by case law").

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion to dismiss, but DENIES

Defendants' motion for attorney's fees. (ECF No. 10.) The Court DISMISSES Kiss's federal

claims with prejudice and his state claims without prejudice.

**IT IS SO ORDERED.**

DATED this 6th day of December, 2022.

_Stacie F. Beckerman_
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge